UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| TIMOTHY TROUTMAN, # 237697, | ) | Civil Action No.: 4:06-1868-PMD-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| | ) | |
| JON OZMINT, ROBERT WARD, | ) | |
| DENNIS PATTERSON, BERNARD | ) | |
| McKIE, and AARON JOYNER, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## I.    INTRODUCTION

Plaintiff, proceeding pro se, brings this action pursuant to 42 U.S.C. § 1983, challenging the conditions of his confinement in the Special Management Unit (SMU) at Kirkland Correctional Institution (KCI) as a Statewide Protective Custody (SPC) inmate of the South Carolina Department of Corrections (SCDC). Specifically, Plaintiff claims that the policy governing the privileges and restrictions applicable to SPC inmates violates the Equal Protection Clause of the Fourteenth Amendment because the policy imposes restrictions on SPC inmates that are not applicable to the general inmate population.

Defendants filed a Motion for Summary Judgment (Document # 33) on January 3, 2007. The undersigned issued an Order, filed January 4, 2007, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the Motion for Summary Judgment and the possible consequences if he failed to respond adequately. Plaintiff filed a Response (Document # 36) on January 22, 2007, to which Defendants filed a Reply (Document # 40) on February 12, 2007. All

pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28

U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. Because these are dispositive

motions, this Report and Recommendation is entered for review by the district judge.

## II.     FACTUAL HISTORY

Plaintiff was most recently admitted to SCDC on August 18, 2004. McKie Aff. at ¶ 3.

During a prior incarceration with SCDC, Plaintiff was placed in SPC due to threats to his safety

stemming from his testimony against Folks gang leaders in the fedearal murder trial of a correctional

officer. Id. at ¶ 4. On August 25, 2004, Plaintiff was evaluated for placement in SPC but indicated

that he did not wish to be placed in SPC at that time. Id. at ¶ 5. Subsequently, on February 3, 2005,

Plaintiff requested to be placed in SPC. Id. at ¶ 6. His request was approved on March 23, 2005,

upon verification of his testimony against Folks gang members and the presence of a confirmed

Folks gang leader at Lieber Correctional Institution, where he was being held at the time. Id. at ¶

7.

The operation of the SPC program is governed by SCDC Policy No. OP-22.23. Id. at ¶ 10.

Inmates who request SPC and are identified as requiring special protection from the general inmate

population are housed in the SMU apart from the general inmate population in order to maintain

their safety and security. Id. at ¶ 8. Inmates designated as SPC are housed in single-occupancy cells

and are subject to restrictions greater than those of the general inmate population. Id. at ¶ 11.

Inmates designated as SPC may request to return to the general population at any time. Id. at ¶ 8.

Plaintiff asserts that the restrictions placed on the SPC inmates are discriminatory because

they are greater than those placed on the general inmate population even though the SPC inmates are

segregated for protective purposes rather than disciplinary purposes. Specifically, Plaintiff

complains about the following restrictions:

- SPC inmates do not have access to "jailhouse lawyers" to help them file lawsuits and are not able to visit the law library;

- SPC inmates are limited to one personal phone call per day, five showers per week, four contact visits per month during weekdays only (no holidays) and for two hours only per visit, and two hours of recreation per day during weekdays only;

- SPC inmates have a $30.00 spending limit at the canteen per week and the list of items they can purchase as well as the list of items they can possess is limited;

- SPC inmates are not allowed to have televisions;

- the SPC program only allows a 7/5 earned work credit level;

- Chaplins do not visit the SPC dorms on a regular basis and SPC inmates are not allowed to attend church services;

- Psychiatric counselors do not provide counseling or monthly evaluations for SPC inmates; and

- even though SPC inmates are segregated from the general population, they are still visible to those in the general population, which will cause problems if an SPC inmate wants to leave SPC and go back into the general population.

Complaint, pp. 4-13.

Plaintiff claims that SPC inmates are being punished by these restrictions even though their placement in SPC is not supposed to be for disciplinary reasons but for safety reasons. Plaintiff asks the court to order Defendants to treat SPC inmates as all other non-disciplinary inmates by allowing them to have all the same privileges as the non-disciplinary inmates.

Defendants do not deny that SPC inmates have greater restrictions and limitations than the general inmate population but argue that the restrictions placed on SPC inmates are reasonably related to legitimate penological interests. Defendants also argue that this case should be dismissed because Plaintiff has failed to exhaust his administrative remedies.

## III.    STANDARD OF REVIEW

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the

-4-

movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the Celotex case, the Court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

## IV.     DISCUSSION

### A.     Exhaustion of Administrative Remedies

Defendants argue that Plaintiff has failed to exhaust his administrative remedies and attaches the Affidavit of Ann Hallman, the Inmate Grievance Administrator for SCDC. Hallman avers that she reviewed Plaintiff's grievance history from the time he was transferred to SPC to the time the lawsuit was filed and that no grievances were filed during that time frame that raise the same issues raised in this action. Plaintiff does not respond to this argument in his Response.

However, Plaintiff asserts in his Complaint that he filed grievances concerning the claims raised in this action in May of 2005 and June of 2005 and that he received final/agency/departmental/institution answers or determinations concerning his grievances in December of 2005 and March of 2006. Nevertheless, Plaintiff failed to attach to his Complaint copies of the grievances he filed or the responses he received. On August 25, 2006, Plaintiff filed an additional attachment (Document # 16) to his Complaint. This attachment is 96 pages and consists of grievances filed by Plaintiff as well as other various documents. A review of these grievances reveals that the only grievance filed by Plaintiff regarding the issues in this action is a Step One Grievance Form, filed on June 5, 2006. On that form, Plaintiff indicates that he filed two grievances in the past asserting that SPC inmates should get the same privileges other non-

disciplinary inmates get.  He further claimed that he had not heard back on his grievances.  The grievance officer returned the form unprocessed, indicating that Plaintiff had only one active grievance, #0448-05, and that the warden responded on 6/13/06.  The attachment submitted by Plaintiff reveals that grievance #0448-05 involves Plaintiff's complaint that he was "gassed" by an officer.  There is no evidence of the two grievances to which Plaintiff refers and there is no evidence that he attempted to refile a grievance concerning these issues when the other one was returned unprocessed.

Plaintiff's claims should be dismissed because he has failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e. In enacting the Prison Litigation Reform Act of 1996 (the PLRA), Congress carved out an exception to the general rule that exhaustion of state remedies is not a prerequisite to filing a civil rights suit. The PLRA amended section 1997e so that it now provides, "No action shall be brought with respect to prison conditions[1] under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Accordingly, before plaintiff may proceed with his claims in this Court, he must first exhaust his

---

[1]The PLRA does not define the term "prison conditions" for use in § 1997e. The Sixth Circuit utilizes a definition derived from 18 U.S.C. § 3262:

> [T]he term "civil action with respect to prison conditions" means any civil proceeding arising under federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings challenging the fact or duration of confinement in prison.

18 U.S.C. § 3626(g)(2). See Hartsfield v. Vidor, 199 F.3d 305, 308 (6th Cir.1999) (specifically requiring exhaustion of plaintiff's equal protection claim).

administrative remedies available through the SCDC grievance process.[2]    The United States

Supreme Court has held that "Congress has mandated exhaustion clearly enough, regardless of the

relief offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741 (2001); see

Porter v. Nussle, 534 U.S. 516 (2002); Jones v. Smith, 266 F.3d 399 (6th Cir.2001)(exhaustion

required even though plaintiff claimed futility); Larkin v. Galloway, 266 F.3d 718 (7th

Cir.2001)(exhaustion required even though plaintiff claimed he was afraid); see also Claybrooks v.

Newsome, 2001 WL 1089548 (4th Cir., September 18, 2001) (unpublished opinion) (applying Booth

v. Churner to affirm district court's denial of relief to plaintiff).

Based on the evidence presented, it is recommended that Defendants' Motion for Summary

Judgment be granted for failure to exhaust administrative remedies. In the event the district judge

finds that plaintiff has exhausted his administrative remedies, the undersigned will discuss plaintiff's

claims on the merits.

###    B.    Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall

... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend.

XIV, § 1. The equal protection requirement "does not take from the States all power of

classification," Personnel Adm'r v. Feeney, 442 U.S. 256, 271 (1979), but "keeps governmental

decision makers from treating differently persons who are in all relevant respects alike." Nordlinger

---

[2]In orders filed on May 9, 1996, this Court certified that the inmate grievance procedure established by the South Carolina Department of Corrections met the standards required by 42 U.S.C. § 1997e(a)(2). See the orders filed in Misc. No. 3:96-MC-83-2 and Misc. No. 3:96-MC-84-2 (D.S.C., May 9, 1996). Requiring Plaintiff to proceed in the SCDC administrative process before pursuing any federal remedies he may have provides him with an opportunity to prevail within the SCDC system that will be lost if the federal court proceeds without requiring that state remedies be exhausted.

v. Hahn, 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992).

Therefore, to succeed on an equal protection claim, Plaintiff "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir.2001). If he makes this showing, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Id. When equal protection challenges arise in a prison context, however, courts must adjust the level of scrutiny to ensure that prison officials are afforded the necessary discretion to operate their facilities in a safe and secure manner. Morrison, 239 F.3d at 654-55.

In Veney v. T.V. Wyche, 293 F.3d 726 (4 Cir.2002), the Fourth Circuit provided,

> ... in a prison context, therefore, we must determine whether the disparate treatment is "reasonably related to [any] legitimate penological interests." Shaw v. Murphy, 532 U.S. 223, 225, 121 S.Ct. 1475, 149 L.Ed.2d 420 (2001). We apply this deferential standard "even when the alleged infringed constitutional right would otherwise warrant higher scrutiny;" however, this more deferential review does not make us ignorant to the concerns that justify application of a heightened standard outside of the prison context. Morrison, 239 F.3d at 655, 656.

Veney, 293 F.3d at 731-732.

Plaintiff claims that he should receive the same privileges as the inmates in the general population. In Taylor v. Rogers, 781 F.2d 1047 (4th Cir. 1986), the Fourth Circuit held that "conditions imposed on prisoners requesting protective custody less favorable than those afforded the general prison population do not give rise to a meritorious claim of denial of equal protection or a denial of due process where the restrictions bear a rational relationship to the protection of the prisoner requesting such relief and where the restrictions are not so onerous as to jeopardize his health." Id. at 1050.

-8-

In the present case, Bernard McKie, Warden of KCI, avers as follows regarding the legitimate

penological interests addressed by the restrictions placed on SPC inmates:

> Due to the inherent attraction of an [SPC] classification, increased security and
> segregation from many of the dangers associated with prison life, and the burden on
> SCDC that these security requirements impose, one of the correctional goals of the
> restrictions imposed upon [SPC] inmates is to discourage unwarranted requests for
> protection and unnecessary inclusion in division while providing the necessary
> security and minimizing the financial and staff impact of the program.  By making
> and [SPC] assignment less comfortable and more restrictive, SCDC seeks to limit the
> attraction of the classification and thus decrease the number of those inmates
> requesting protection.  By lowering the number of requests and thus the number of
> approved requests, SCDC is better able to allocate its financial resources and
> manpower to provide this individualized security to those who truly require such
> measures.

McKie Aff. at ¶ 12.

As noted by McKie, "because of the security risk, [SPC] inmates require segregation from

the general population and each other at all times, including during recreation, showering and

participating in all other out-of-cell activities." Id. at ¶ 13.  When out of the cell, each SPC inmate

is supervised by at least one correctional officer at all times. Id. at ¶ 14.  Contact visits are permitted,

but must be limited because they cannot occur with the general population.  Id. at ¶ 15.  Medical

personnel visit the SPC unit daily.  Id. at ¶ 16.  Mental health professionals assess SPC inmates once

every three months.  Id.  If an inmate requires out-of-cell treatment, two correctional officers must

escort the inmate to the medical wing after the general population is cleared from the area.  Id.  SPC

inmates may not visit the law library due to the concern of contact with other inmates.  Id. at ¶ 18.

However, SPC inmates have access to legal materials upon request.  Id.

SPC inmates are provided work assignments consistent with their classification.  Id. at ¶ 17.

Many assignments available to the general population are not available to SPC inmates because SPC

inmates must complete their job assignments individually and within the SPC unit.  Id.

The property restrictions placed on SPC inmates are for internal security reasons.  Id. at ¶ 21.
The property restrictions limit the number of places SPC inmates have to hide weapons and
contraband, which, in turn, provides a more secure and safe environment for other inmates and staff.
Id.  Furthermore, the property restrictions serve as a deterrent for inmates to request SPC
classification.  Id.  As noted above, "the security concerns of [SPC] inmates place a much higher
burden on SCDC staff than that of the general population inmates.  The restrictions on privileges
available to these inmates seek to diminish the attraction to the program thereby keeping the number
of [SPC] inmates at an appropriate and workable level."  Id. at ¶ 20.

Plaintiff fails to present an issue of material fact.  The limitations and restrictions placed on
SPC inmates are rationally related to the need for prison security and order.  Furthermore, the
restrictions are not so onerous as to jeopardize Plaintiff's health.  Thus, summary judgment is
appropriate as to Plaintiff's claim of equal protection.[3]

## C.    Cruel and Unusual Punishment

Plaintiff does not assert an Eighth Amendment claim for cruel and unusual punishment in
his Complaint.  However, he does make such an assertion in his Response to Defendants' Motion
for Summary Judgment.  Thus, the undersigned will address it briefly.  In Taylor, the Fourth Circuit
noted that it was settled and binding precedent in the circuit that placement in protective segregation

_____

[3]In his complaint, Plaintiff appears to assert some sort of racial discrimination by claiming
that all of the inmates in SPC are white.  However, Plaintiff presents no evidence that the
restrictions placed upon the SPC inmates are the result of intentional or purposeful discrimination
based on race.  See Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir.2001).  Also, Plaintiff fails
to show or allege that persons outside his "protected" class are being treated more favorably.
Thus, this claim is without merit.

for someone who has not violated prison rules is not a violation of the Eighth Amendment prohibition against cruel and unusual punishment.  <u>Taylor</u>, 781 F.2d 1050.  Plaintiff fails to show that any of the restrictions placed on him as an SPC inmate amount to cruel and unusual punishment. As such, summary judgment is appropriate on this claim as well.

## V.    CONCLUSION

For the reasons stated above, it is recommended that Defendants' Motion for Summary Judgment (Document # 33) be granted and this case dismissed.

 s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

August 13, 2007
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**