**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION**

| | |
|---|---|
| TIMOTHY TROUTMAN, # 237697,     )<br>                                                                )<br>                                  Plaintiff,     )<br>                                                                )     C.A. No.: 4:06-1868-PMD-TER<br>v.                                                         )<br>                                                                )<br>JON OZMINT, ROBERT WARD,           )     **ORDER**<br>DENNIS PATTERSON, BERNARD     )<br>McKIE, MIKE McCALL, and AARON  )<br>JOYNER,                                              )<br>                                                                )<br>                                  Defendants.  )<br>_____) | |

Plaintiff Timothy Troutman ("Plaintiff"), an inmate at the Kirkland Correctional Institution ("KCI"), filed this *pro se* action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. Defendants filed a Motion for Summary Judgment, to which Plaintiff responded. The record contains the report and recommendation ("the R&R") of United States Magistrate Judge Thomas E. Rogers, III, which was made in accordance with 28 U.S.C. § 636 (b)(1)(B). This matter is before the court upon the Magistrate Judge's recommendation that Defendants' Motion for Summary Judgment be granted. A party may object, in writing, to a report and recommendation within ten days after being served with a copy of that report. 28 U.S.C. § 636 (b)(1). On August 29, 2007, Plaintiff filed his timely objections to the R&R.[1]

**BACKGROUND**

On June 26, 2006, Plaintiff brought suit pursuant to 42 U.S.C. § 1983 against Jon Ozmint,

---

[1] Plaintiff filed a document entitled "Notice of Appeal," through which he attempts to "appeal to the United States Court of Appeals for the Fourth Circuit from Report and Recommendation entered in this action." However, an R&R is not an order of this court and is not appealable. Accordingly, the court interprets Plaintiff's filing as objections to the R&R and considers it herein. This document is hereinafter referred to as "Objections."

Robert Ward, Dennis Patterson, Bernard McKie, Mike McCall, and Aaron Joyner.

While previously incarcerated on a separate conviction with SCDC, Plaintiff testified against a Folks gang member in the murder trial of a federal correctional officer. (*Id*. at ¶ 4.) He was placed in Statewide Protective Custody ("SPC") at that time to ensure his personal safety from other inmates, and remained in protective custody until his release on June 16, 2000. (*Id.*) Plaintiff was re-admitted to the custody of the South Carolina Department of Corrections ("SCDC"), at KCI, on August 18, 2004. (McKie Aff. at ¶ 3.)

On February 3, 2005, Plaintiff applied to be placed in SPC, citing fear for his personal safety. (*Id*. at ¶ 6.) The SCDC Division of Classification, upon verifying Plaintiff's participation in the aforementioned murder trial and the presence of a known Folks gang member at KCI, approved Plaintiff's request, and he was placed in SPC on March 23, 2005. (*Id*. at ¶ 7.) He has remained in SPC since that time, and has made no request to return to the general inmate population. (*Id.* at ¶ 9.)

To ensure their safety, SPC inmates are kept apart from the general inmate population and housed in single-occupancy cells. (*Id*. at ¶¶ 8, 11.) The SCDC also has a policy of imposing a number of restrictions upon inmates in SPC, in order to discourage frivolous requests for the status so that corrections officials can ensure that inmates in the protective custody program require the isolation and protection it provides. (*Id*. at ¶ 12.)

Plaintiff alleges that certain of these restrictions are an unconstitutional because they are unfairly punitive. Specifically, Plaintiff complains of the following restrictions:

1. SPC inmates are not allowed to visit the law library, or confer with other inmates who are familiar with legal forms and procedures who could assist them with *pro se* matters. (Complaint at 4.)

2. SPC inmates are only allowed: one personal phone call per day, five showers per week, four contact visits per month (which are limited to two hours in duration and must be on weekdays), and two hours of recreation per day (only on weekdays). SPC inmates are also allowed fewer personal items such as clothes and toiletries than the general inmate population. (*Id*. at 6-7.)

3. SPC inmates can only spend $30.00 per week at the canteen, and are not allowed to purchase certain items such as tobacco which are available to the general inmate population. (*Id*. at 7.)

4. SPC inmates are restricted to receiving 7/5 work credit. This does not allow them to earn as much credit towards reducing their sentences as the other work credit classifications available to the general inmate population. (*Id*. at 8-9.)

5. SPC inmates are prevented from attending the prison religious services, and do not receive regular visits from chaplains. (*Id*. at 9.)

6. SPC inmates are not allowed to have televisions in their rooms. (*Id*. at 10.)

7. SPC inmates do not receive monthly evaluations or counseling services from psychiatric counselors. (*Id*.)

8. SPC inmates are too visible to the rest of the inmate population. The SPC facility and recreation yard is visible to the general inmate population, and SPC inmates are visible to the general inmate population whenever they must leave KCI for medical reasons or otherwise. Plaintiff asserts that the general inmate population is openly hostile towards SPC inmates, and this visibility makes it impossible for him to ever be transferred out of SPC without fearing for his personal safety. (*Id*. at 12-13.)

Plaintiff requests that SPC inmates not be subject to any of the above restrictions, and receive the same rights and privileges as those given to the general inmate population. (*Id.* at 21.)

Defendants filed a Motion for Summary Judgment on January 3, 2007. The motion contended that Plaintiff had (1) failed to exhaust his administrative remedies as required by law; and (2) had not demonstrated that the allegations, even if taken as true, constituted a violation of his constitutional rights. Plaintiff filed a Response on January 22, 2007, to which Defendants filed a Reply on February 12, 2007.

In his R&R dated August 13, 2007, Magistrate Judge Rogers recommended that the Defendants' Motion for Summary Judgment be granted on the grounds that Plaintiff failed to exhaust his administrative remedies. (R&R at 7.) In the event that the court finds that Plaintiff did in fact exhaust his administrative remedies, Magistrate Judge Rogers recommended that the Defendants' Motion for Summary Judgment be granted on the grounds that Plaintiff failed to present an issue of material fact on his constitutional claims. (R&R at 10, 11.) Plaintiff filed his Objections to the R&R on August 29, 2007.

## STANDARD OF REVIEW

### A.     Legal Standard for Summary Judgment

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is

appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327.

### B.     The Magistrate Judge's R&R

This court is charged with conducting a *de novo* review of any portion of the R&R to which a specific objection is registered and may accept, reject, or modify, in whole or in part, the recommendations contained in that report. 28 U.S.C. § 636 (b)(1). Any written objection must specifically identify the portions of the report and recommendation to which objections are made and the basis for those objections. *Id.* After a review of the entire record, the R&R, and Plaintiff's Objections, the court finds that the Magistrate Judge fairly and accurately summarized the facts and applied the correct principles of law. Accordingly, the R&R is adopted in full and specifically incorporated into this Order.

## ANALYSIS

### A.     Exhaustion of Administrative Remedies

In 1996, Congress passed the Prison Litigation Reform Act ("PLRA") "[i]n response to an ever-growing number of prison-condition lawsuits that were threatening to overwhelm the capacity

of the federal judiciary." *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 676 (4th Cir. 2005) (citations omitted). The PLRA provides that "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This requirement is mandatory. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002) (holding that the "PLRA's exhausting requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong").

### B.     Objections

Plaintiff objects only to the Magistrate Judge's recommendation to dismiss his claim for failure to exhaust all administrative remedies as required by 42 U.S.C. § 1997e.[2] Plaintiff asserts three distinct reasons why the court should not follow the Magistrate Judge's recommendation.

#### 1.     Plaintiff's Claim That He Exhausted Administrative Remedies on These Claims Before Bringing this Action

In his Objection, Plaintiff directs the court's attention to an additional attachment to his Complaint (filed as Document # 16), which Plaintiff describes as "materials relating to his attempt to handle this mat[t]er administratively." (Objections at 2.) This attachment consists of 96 pages

---

[2] The Magistrate Judge found that, even if the court were to find that Plaintiff had exhausted his administrative remedies, the Plaintiff failed to allege any issues of material fact relating to his underlying claims arising under (1) the Equal Protection Clause of the Fourteenth Amendment and (2) the Cruel and Unusual Punishment Clause of the Eighth Amendment. The Plaintiff's Objections did not address either of these recommendations. Accordingly, the court adopts these recommendations without further discussion, and finds that even if the Plaintiff's claims were not barred due to failure to exhaust administrative remedies, they must be dismissed because no genuine issue of material fact relating to the underlying substantive claims has been alleged. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983) (noting that in the absence of specific objections to an R&R, the court is not required to give any explanation for adopting the recommendation).

of filed grievances, internal correspondence regarding grievances, appeals to and decisions by the State of South Carolina Administrative Law Court regarding Plaintiff's grievances, and various other documents.

However, in the entirety of this document, there is only one reference to the basis of the Plaintiff's Complaint in this matter.[3] On June 9, 2006, Plaintiff filled out a "Step 1 Inmate Grievance Form" in which he claimed to have previously filed grievances "concerning different problems that the PC program is having getting privileges that we should be getting that the other non-disciplinary inmates are getting." (Compl. Attach. at 17). In the Section on the Grievance Form marked "Action Requested," Plaintiff wrote, "To get all privileges as other non-disciplinary inmates." *Id*. On June 13, 2006, this Form was returned to Plaintiff unprocessed by the grievance officer. The grievance officer notified Plaintiff that no record existed of any previous grievances filed by Plaintiff on the subject of getting additional privileges for protective custody inmates. Furthermore, the grievance officer wrote that he was unable to process Plaintiff's grievance in its present form because Plaintiff's complaint and action requested were too vague to be the basis of any action. Plaintiff has not claimed that he took any action in response to being notified that his grievance would not be processed, and nowhere in the record is there any evidence that he made any attempt to do so.

The mere act of filing a grievance is not sufficient to satisfy the PLRA's exhaustion of administrative remedies requirement. *Woodford v. Ngo*, 126 S. Ct. 2378 (2006) (holding that where an inmate's grievance was rejected for procedural reasons and inmate took no further administrative action before filing a § 1983 suit, dismissal was proper because inmate had not exhausted all

---

[3] The other 95 pages of this document relate to other grievances filed by the Plaintiff, wholly unrelated to the grounds of the Complaint.

available administrative remedies). In this context, exhaustion "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id*. at 2385 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)(emphasis in original)); *see also Hartsfield v. Vidor,* 199 F.3d 305 (6th Cir. 1999) (holding that where an inmate filed an initial grievance form, but it was returned to him with the information that there was no record of the previous referenced grievances, and inmate took no further action, this did not constitute exhaustion of administrative remedies).

The record shows that Plaintiff is well acquainted with the proper procedures for filing a grievance and appealing an adverse ruling, and has done so on numerous occasions. Upon being notified that his grievance had not been processed due to its lack of specific complaints, Plaintiff could have re-filed a Step 1 Inmate Grievance Form that specifically identified which privileges Plaintiff believed protected custody inmates should receive. This would have allowed a grievance officer to respond to the merits of the complaint. If Plaintiff had done so and the grievance had been denied, Plaintiff would have at that point had an opportunity to appeal such a decision to the State of South Carolina Administrative Law Court.

The court finds that Plaintiff did not direct his grievances through the proper administrative procedures available to him, and therefore did not exhaust all available administrative remedies before filing his § 1983 suit.

    **2. Plaintiff's Claim That He Has Exhausted Administrative Remedies on These Claims Subsequent to Bringing this Action**

Plaintiff claims in his Objections that since submitting the materials in Document 16, he "has submitted additional letters and requests to defendants in an attempt" to have his grievances in this matter satisfied. (Objections at 2). These allegations are not included in any of Plaintiff's previous filings with the court; however, even if the court interprets these claims as part of this litigation,

Plaintiff has provided the court no evidence or documentation for these claims, and no detail as to the chronology, substance, or outcome of any such efforts.

Even if the court acknowledges that Plaintiff has pursued administrative remedies subsequent to filing the original Complaint, the exhaustion requirement requires that all available administrative remedies be exhausted prior to the commencement of the litigation. 42 U.S.C. § 1997e(a) ("No action shall be *brought* . . . until such administrative remedies as are available are exhausted.") (emphasis added). The purpose of the exhaustion requirement is twofold. First, it gives an administrative agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." *Woodford*, 126 S. Ct. at 2385 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). Second, "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id*. Any consideration of administrative remedies pursued after the commencement of the litigation would only serve to frustrate both purposes of the PLRA's exhaustion requirement.

Therefore, if Plaintiff has in fact sought administrative resolution since filing the Complaint, it has no bearing on the court's decision as to whether the Plaintiff exhausted all available administrative remedies.

        **3.**     **Plaintiff's Claim that He Has Not Exhausted All Available Administrative Remedies Due to Harassment and Retaliation**

Plaintiff also claims in his Objections that corrections officials have engaged in retaliation, harassment, and "covering up." (Objections at 2). Although Plaintiff never explicitly makes such a claim, Plaintiff implies that these actions prevented him from exhausting all available administrative remedies. *Id.* ("Hence the end effect of administrative remedies become moot and secondary to the protection and well-being of the grievant."). Plaintiff did not raise these allegations at any prior stage of the litigation, and his allegations are stated in the form of vague,

conclusory accusations.[4]

A § 1983 claim can survive summary judgment, despite a failure to exhaust all administrative remedies, where the behavior of prison officials effectively made such remedies unavailable to an inmate. *See, e.g., Hemphill v. New York*, 380 F.3d 680, 689 (2d Cir. 2004) (holding that defendants who actively denied an inmate access to administrative remedies could be estopped from seeking summary judgment on failure to exhaust administrative remedies grounds); *Chronister v. Metts*, 2006 WL 533380 at *3 (D.S.C. Mar. 3, 2006) ("'[E]xhaustion may be achieved in situations where prison officials fail to timely advance the inmate's grievance or otherwise prevent him from seeking his administrative remedies.'" (quoting *Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir. 2004))); *Taylor v. Barnett*, 105 F.Supp.2d 483, 486 (E.D. Va. 2000) (stating that the plaintiff has exhausted his available administrative remedies when he properly filed a grievance, did not receive a response, and was unable to appeal because procedure required a written resolution of claims before he could use the appeals process).

However, while all evidence is viewed in the light most favorable to the nonmoving party, a party cannot avoid summary judgment simply by making unsupported statements of fact. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985) (holding that unsupported allegations "do not confer talismanic immunity from Rule 56"); *see also Herbert v. Saffell*, 877 F.2d 267, 273 (4th Cir. 1989) (holding that summary judgment was appropriate where nonmoving party "produced no evidence, beyond bald allegations in the pleadings."). This is especially true when

---

[4] The only specific allegation contained in the Objections is that Plaintiff was separated from other protective custody inmates because of his pursuit of unspecified administrative remedies *after* the commencement of this litigation. Since both the alleged action itself and the request for administrative relief which Plaintiff claims was the impetus for the retaliation occurred before Plaintiff filed the Complaint in this matter, the alleged incident of retaliation is beyond the court's inquiry.

the unsupported statements of fact are vague and conclusory. *White v. Boyle*, 538 F.2d 1077, 1079 (4th Cir. 1976) (holding that an adverse party to a summary judgment motion "must set forth specific facts showing that there is a genuine issue for trial."). Although Plaintiff is not required to prove his case at this summary judgment stage, he is obligated to present evidence that he would produce at trial sufficient to lead a rational trier of fact to possibly find for him. *RGI, Inc. v. Unified Indus., Inc.*, 953 F.2d 658, 661 (4th Cir. 1992).

Plaintiff has not provided, in his Objections or at any other point in this litigation, any specific allegations of acts of harassment or retaliation related to his ability to exhaust his administrative remedies, nor has Plaintiff explained which administrative remedies were denied to him by the alleged misconduct.

After reviewing the Objections, the Complaint, the R&R, affadavits and all other documents in the record, the court finds that Plaintiff has presented no specific allegations sufficient to raise an issue of material fact as to whether prison officials prevented him from exhausting his administrative remedies.

Because of his *pro se* status, the court reads Plaintiff's Objections as broadly as possible so as to state any viable objection to the Magistrate Judge's recommendation. However, even construed broadly, the court finds that the Plaintiff's Objections to the Magistrate Judge's finding that Plaintiff did not exhaust his administrative remedies as required by 42 U.S.C. § 1997e are without merit.

## CONCLUSION

For the aforementioned reasons, the court adopts the R&R's recommended disposition and denies Plaintiff's Objections. It is therefore **ORDERED** that, adopting in full the recommendations of the Magistrate Judge, Defendants' **MOTION FOR SUMMARY JUDGMENT** is **GRANTED**,

and Plaintiff's claims are hereby **DISMISSED** without prejudice.

    **AND IT IS SO ORDERED**.

*[Signature]*
PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**September 11, 2007.**